743 P.2d 983

**Timothy J. GAWRON,
Petitioner-Appellant,**

v.

**Lt. Mike ROBERTS, Jailor, Ada County
Jail; Robert Lewis, Probation Officer;
and Ronald Housley, Probation Officer,
Respondents.**

No. 16604.

Court of Appeals of Idaho.

July 13, 1987.

Timothy J. Gawron, pro se.

Jim Jones, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for respondents.

WALTERS, Chief Judge.

Timothy Gawron was arrested and jailed by his probation officer for violating the terms of his probation agreement. Two days later, in a habeas corpus proceeding, a magistrate ordered Gawron released from custody. After Gawron's release, the state appealed to the district court. The district court reversed the magistrate's decision, concluding that Gawron "was not illegally in custody" when the magistrate ordered his release. Gawron appeals from the district court's decision. He presents two issues: (1) Does a magistrate have jurisdiction to pass judgment upon a petition for writ of habeas corpus challenging the interim detention of a prisoner held under a probation officer's warrant alleging probation violations? (2) If so, is detention unconstitutional where the petitioner has not been provided with an initial or prerevocation hearing within forty-eight hours of his arrest? We hold that under the circumstances of this case the petitioner was entitled to be released from custody. Therefore, we reverse the ruling of the district court and affirm the decision of the magistrate. However, because the petitioner is presently incarcerated in the state penitentiary pursuant to another commitment, no release in fact results from our decision.

Gawron was on probation under a five-year suspended sentence for receiving stolen property. After he had been on proba-tion for about three years, a search of Gawron's residence and vehicle by his probation officer and police revealed items suspected to be narcotics paraphernalia, burglary tools and stolen property. The search was conducted at 11:00 a.m. on Monday, November 19, 1984. Gawron was present during the search and was arrested immediately thereafter by the probation officer for allegedly violating probation. Gawron was confined in the Ada County jail. Apparently the arresting officer's report to the court was prepared the following day, November 20, but was not signed until Wednesday, November 21.[1]

On November 21, Gawron petitioned for a writ of habeas corpus and sought release on bail. The writ was issued at 10:45 a.m. on that day. In response to the writ, Gawron was brought before a magistrate at approximately 3:00 p.m. that same afternoon. The state stipulated that the sentencing judge had not issued a bench warrant for Gawron's arest nor had an underlying criminal charge been filed. The state relied primarily on I.C. § 20-227 for its authority to hold Gawron.[2]

In his petition, Gawron alleged that he previously had been arrested twice on probation officers' warrants, held in jail for up to ten days, and then released without violation reports ever being filed. Evidently to avoid reoccurrence of similar treatment, in his petition Gawron contended that he was entitled to be apprised of the charges against him and to a bail hearing or to release from custody. The deputy prosecuting attorney's return to the writ of

1. The district judge later determined that the unsigned report had been delivered to the sentencing court on Tuesday, November 20. Our examination of the record reveals that the district court's conclusion is supported by nothing more than a presumption flowing from ordinary practice. In fact, at the habeas corpus hearing on the afternoon of November 21, the deputy prosecutor had stated: "[Y]es, I guess you're right, there hasn't been a probation violation filed at this time."

2. Idaho Code § 20-227 provides:
Any parole or probation officer may arrest a parolee or probationer without a warrant, or may deputize any other officer with power of arrest to do so, by giving him a written statement setting forth that the parolee or proba-tioner has, in the judgment of said parole or probation officer, violated the conditions of his parole or probation. Such written statement, delivered with the parolee or probationer by the arresting officer to the official in charge of the institution from which the parolee was released, the county jail or other place of detention, shall be sufficient warrant for the detention of the probationer or parolee. The parole and probation officer shall at once notify the commission, or the court, of the arrest and detention of the parolee or probationer, and shall submit in writing a report showing in what manner the parolee or probationer is alleged to have violated the condition of his or her parole or probation.

habeas corpus stated that Gawron had been arrested pursuant to I.C. § 20–227, was in custody, and was the subject of a probation officer's report which had been prepared for submission to the sentencing judge. The return stated that Gawron was lawfully in custody and would be brought before the sentencing judge within fifteen days pursuant to I.C. § 20–229A.[3] The return did not controvert Gawron's allegations regarding prior detentions. Unless controverted, the allegations of a petition for writ of habeas corpus must be treated as true in determining whether the writ shall issue. *Mahaffey v. State,* 87 Idaho 228, 392 P.2d 279 (1964). The writ was duly issued.

The writ commanded the jailer and Gawron's probation officers:

> To bring Timothy Gawron, currently incarcerated at the Ada County Jail, before this Court at the hour of 3:00 o'clock p.m., November 21, 1984, at the Barrister St. Courthouse and at said time show cause why Timothy Gawron should not be informed on the charges, if any, against him; and further, why he should not be released from incarceration and be given the opportunity at said time and place to be heard on the matter of bail.

At the resulting hearing, Gawron's counsel indicated the legality of the arrest was not being challenged. Instead, Gawron sought release on bail pursuant to I.C.R. 33(e). The magistrate's inquiry led him to conclude that the state was required to file a probation violation report or some other form of complaint within a reasonable period. He found that no order for detention had been issued by the sentencing judge, nor had a magistrate issued a warrant based upon any criminal charge forming the basis for the violation allegations. He also found two business days to be an unreasonably long period between the arrest and the "arraignment." Therefore, at 4:20 p.m., he ordered that Gawron be released from custody at 5:00 p.m. that day, *unless* by that time the state obtained a warrant for the detention of Gawron issued

by a court of competent jurisdiction. Thirty-seven days later, on December 28, 1984, the state appealed to the district court.

The district court reversed the magistrate's determination. The district court held that the matters of bail and release must be brought before the sentencing judge, who retained jurisdiction over the defendant during his probationary period. And, in any case, notification to the sentencing judge of the arrest and alleged violation satisfied due process and statutory requirements.

Before examining the merits of Gawron's appeal, we must address a question not raised by the parties. The magistrate's order simply released Gawron from custody. It did not dismiss the probation violation charge. The parties have not apprised us whether Gawron's probation was subsequently revoked, or whether that proceeding terminated upon his release. In any case, Gawron is presently incarcerated on other grounds and, therefore, is not subject to a new detention pending probation revocation. Thus, on its face, the case before us would appear to be moot and subject to dismissal.

However, one of the exceptions to the mootness doctrine has been succinctly stated as follows:

> If the alleged constitutional violation is likely to be repeated, and the duration of the violation to any one individual's rights is predictably less than the time ordinarily required to obtain a hearing on the issue, and the alleged violation is of strong public interest, then the mootness doctrine will not apply. [Citations omitted.]

*Russell v. Fortney,* 111 Idaho 179, 180, 722 P.2d 488, 489 (1986) (opinion by Huntley, J., dissenting from order denying petition for review of Court of Appeals' decision in *Russell v. Fortney,* 111 Idaho 181, 722 P.2d 490 (Ct.App.1986)).

■ We believe this case fits within the exception. Circumstances similar to this case are capable of repetition and yet could

---

3. As the magistrate recognized, I.C. § 20–229A applies only to *parole* violations. On appeal, the respondents do not rely upon I.C. § 20–229A for authority to detain Gawron.

otherwise evade review. *See Luther v. Molina*, 627 F.2d 71 (7th Cir.1980). A continuing risk exists that probationers will be detained in violation of their constitutional rights. In probation revocation proceedings, delays in providing an initial hearing or appearance before a court can be expected to be too short in duration to be fully litigated prior to a final hearing on the merits of the revocation. Thus, probationers may continue to seek recourse by way of writ of habeas corpus. Here, both parties seek a resolution of the issues presented by Gawron's appeal. The issues are worthy of our attention. We now turn to those issues.

## I

We turn first to the question of the magistrate's jurisdiction to rule on Gawron's habeas corpus application. The district judge held that the magistrate erred by entertaining Gawron's petition,[4] and, in any case, Gawron's statutory and constitutional rights had not been violated. The respondents, Roberts (the jailer), Lewis (Gawron's probation officer) and Housley (Lewis' supervisor), argue in support of the district court's decision.[5]

■ It appears that, pursuant to I.R.C.P. 82(c)(2)(E), the magistrate in this case was authorized by the district court to handle habeas corpus cases in general. *See* IDAHO STATE BAR DESK BOOK § C, p. C-26 (1987) (local rule 3 of the Fourth Judicial District). Habeas corpus is an extraordinary writ which is inappropriate where other adequate remedies are available. *See In re Application of Downing*, 103 Idaho 689, 652 P.2d 193 (1982). Although bail is available pending a probation revocation hearing, *see* I.C.R. 33(e), the respondents note that "after a judge has granted probation, he retains jurisdiction during the probationary period." *State v.*

*Oyler*, 92 Idaho 43, 47, 436 P.2d 709, 713 (1968). *See also* I.C. § 19-2601 (authority of sentencing court to place defendant upon probation). The respondents interpret *Oyler* as conferring *exclusive* jurisdiction upon the sentencing court. Therefore, they argue, unless the sentencing judge is not available, *only* that judge has the power to release a probationer when a probation revocation proceeding is pending.

We do not read *Oyler* so restrictively. The Court in *Oyler* couched its reference to the retention of jurisdiction by the sentencing court in probation cases in terms of the trial court's continuing discretion to modify the conditions of probation. We find nothing in *Oyler* to suggest that the sentencing court's jurisdiction is exclusive. Our examination of the ambit of a writ of habeas corpus action suggests a contrary result.

■ The "Great Writ" of habeas corpus is a time-honored method of testing the authority of one who deprives another of his liberty. *See Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Johnson v. State*, 85 Idaho 123, 376 P.2d 704 (1962); C. WRIGHT, THE LAW OF FEDERAL COURTS § 53 (4th ed. 1983). Ordinarily, the writ is available to effect discharge from any confinement which is in violation of constitutional protections. C. WRIGHT, *supra*.

■ In Idaho, the writ is not simply a statutory remedy. It is a remedy recognized and protected by the Idaho Constitution. *Mahaffey v. State*, 87 Idaho 228, 392 P.2d 279 (1964); *see* IDAHO CONST. Art. 1, § 5. The action is to be construed and applied to preserve, not to destroy, constitutional safeguards of liberty. *Mahaffey v. State, supra*.

The essence of habeas corpus is an attack upon the legality of a person's detention for the purpose of securing release where custody is illegal. The writ

---

**4.** The district judge reasoned that the sentencing judge retains jurisdiction over a defendant during the probationary period; that the question of bail or release pending determination of alleged probation violation should be presented to the sentencing judge; and, therefore, "It was improper for the matter to have been presented to the magistrate and improper for him to exer-

cise jurisdiction where another judge already had jurisdiction."

**5.** Although the State is not a party to this appeal, the attorney general's office has elected to represent respondents. *See, e.g., In re Blades*, 59 Idaho 682, 86 P.2d 737 (1939).

was developed as an extraordinary remedy where correctional actions are inadequate. The writ is an avenue by which relief can be sought where detention of an individual is in violation of a fundamental right.

*In re Application of Robison,* 107 Idaho 1055, 1057, 695 P.2d 440, 442 (Ct.App.1985).

In a habeas corpus action seeking release from a mental health institution, our Supreme Court explained that, despite the committing court's continuing jurisdiction to determine whether the committed person has met the standards for release, an application for release due to an invalid commitment may be brought by means of a habeas corpus writ. *In re Application of Downing, supra; see also In re Application of Robison, supra.* Compare *Flores v. Lodge,* 101 Idaho 533, 617 P.2d 837 (1980) (assertion that standards have been met is inappropriate habeas corpus ground). Likewise, a federal parolee confined during revocation proceedings may properly be granted habeas corpus relief, including bail, if a preliminary prerevocation hearing was not conducted quickly enough to adhere to constitutional requirements. *Luther v. Molina, supra.* See generally, Annotation, *Parole or Probation Revocation,* 36 L.Ed.2d 1077, 1083 § 2[b] (1973).

■■■ We find Gawron's situation to be comparable. His writ did not seek release based solely on a statutory process committed to a particular court. He also sought release because he had not been afforded the process he believed to be due by constitutional right. A habeas corpus proceeding is appropriate to obtain discharge when a prisoner is held without a prerevocation of parole hearing. *E.g., In re Valrie,* 12 Cal.3d 139, 115 Cal.Rptr. 340, 524 P.2d 812 (1974), *cert. denied,* 420 U.S. 938, 95 S.Ct. 1148, 43 L.Ed.2d 414 (1975). We hold that it was within this magistrate's jurisdiction to receive and rule upon the petition. Gawron was entitled to have the grounds for his detention tested. We turn next to the magistrate's ultimate conclusion that Gawron should be released.

## II

The magistrate concluded that Gawron had not been provided with a hearing upon, or notice of, any charges within a reasonable period. The magistrate therefore conditionally ordered Gawron's release. The issue before us is thus narrowly framed. May a probationer, arrested on a probation officer's authority, be held in custody for more than forty-eight hours without receiving a preliminary prerevocation hearing before an independent and neutral hearing officer?

The minimum due process standards for probation revocation were announced by the United States Supreme Court in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). *See also* Annotation, *Probation-Parole-Pardon-Revocation,* 29 A.L.R.2d 1074 (1953) (review of pre-*Morrissey* cases); Annotation, *Parole or Probation Revocation,* 36 L.Ed.2d 1077 (1973) (review of post-*Morrissey* cases). In *Morrissey,* the Court noted that there are two important stages in the typical process of parole revocation. The first stage occurs when a parolee is arrested and detained at the direction of his parole officer. The second stage occurs when parole is formally revoked. Given the fact that there is typically a substantial time lag between the arrest and the eventual disposition of the case by the parole board, the Court held that,

> [D]ue process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and *as promptly as convenient after arrest* while information is fresh and sources are available. [Citation omitted.] Such an inquiry should be seen as in the nature of a "preliminary hearing" to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions.

*Id.* 408 U.S. at 485, 92 S.Ct. at 2602 (emphasis added). As noted, if the parole revocation is further pursued following the preliminary probable-cause hearing, the parol-

ee is then entitled to another, more comprehensive hearing "lead[ing] to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Id.* at 488, 92 S.Ct. at 2603. In *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Court extended the due process requirements of *Morrissey* to a probationer. The Court said:

> When the officer's view of the probationer's or parolee's conduct differs ... from the latter's own view, due process requires that the difference be resolved before revocation becomes final. Both the probationer or parolee and the State have interests in the accurate finding of fact and the informed use of discretion—the probationer or parolee to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community.
>
> It was to serve all of these interests that Morrissey mandated preliminary and final revocation hearings. At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing. *Morrissey v. Brewer, supra* [408 U.S.] at 487 [92 S.Ct. at 2603], 33 L.Ed.2d 484. The final hear-

ing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause....

*Id.* at 785–86, 93 S.Ct. at 1761.

■ The liberty of a parolee or probationer is a valuable right and hence falls within the protection of the fourteenth amendment. *See Morrissey v. Brewer, supra; Gagnon v. Scarpelli, supra.* Accordingly, the minimum process described in *Morrissey* and *Gagnon* is guaranteed to Gawron by the federal constitution. Our rules also require a final revocation hearing before probation can be revoked. I.C.R. 33(e); *see also State v. Edelblute,* 91 Idaho 469, 424 P.2d 739 (1967). Although Idaho's rules and statutes are silent regarding the initial probable cause or "preliminary" hearing, as described in *Morrissey,* the procedure for such a hearing together with a worksheet or checklist for the matters to be covered at such a hearing—to comport with *Morrissey* and *Gagnon*—are provided in the IDAHO TRIAL JUDGES MANUAL §§ 10.1 to 10.19, published by the Idaho Administrative Office of the Courts.[6]

It will be recalled that Gawron was arrested about noon on a Monday. When Gawron was brought before the magistrate at 3:00 p.m. two days later, neither a probable cause hearing nor an arraignment yet had been held or scheduled in respect to Gawron's alleged violations. The magistrate determined that an unreasonable period had elapsed. The district judge disa-

---

**6.** The "Worksheet on Probation Violation" contains the following checklist:

PRELIMINARY HEARING

Probationer notified as follows:

1. of alleged violations of probations;

2. of opportunity to appear and present evidence in his own behalf;

3. of right to confront any adverse witnesses;

4. of a right to counsel at public expense if needy person at final hearing;

5. of right to counsel at the probationer's expense.

Counsel Appointed? _____

HEARING DATE and TIME? _____

Bond? _____

FINAL HEARING

1. written notice of claimed violations of probation received?

2. evidence against probationer disclosed to him?

3. opportunity to be heard in person and to present witnesses and documentary evidence;

4. right to confront and examine adverse witnesses;

5. written statement by the court as to the evidence relied on and reasons for revoking probation, the incarceration or other steps ordered by the court.

greed. Thus, our task is to determine whether Gawron was confined without being afforded an initial hearing "as promptly as convenient after arrest" in accordance with *Morrissey*.

Idaho Code § 20–227, requires that, following an arrest without a bench warrant, the probation officer shall "at once" notify the sentencing court of the arrest and detention of the probationer, and shall submit a written report showing in what manner the probationer is alleged to have violated the condition of his or her probation. The district court concluded that a report had been submitted in conformity with the statute. The district judge held that any "short delay" in submitting this report did not justify Gawron's release from custody. Although nothing in the record indicates that a prerevocation hearing had even been scheduled when Gawron was brought before the magistrate, the respondents contend nothing more was needed to bring this probation violation to the attention of the sentencing court. However, the record indicates the magistrate was also concerned with the failure of the authorities to "arraign" Gawron within a reasonable time. If Gawron's right to due process was violated, compliance with Idaho's statutory process would not shield the state. It is the constitutional ground for release which we examine.

We receive guidance from related prompt-hearing provisions in other rules and statutes of Idaho. Among the statutes relating to arrest warrants, I.C. § 19–515 requires that "The defendant must in all cases be taken before the magistrate without unnecessary delay." Additionally, Idaho Criminal Rule 5(b) provides that "A defendant arrested, whether or not pursuant to a warrant, shall be taken before a magistrate in that judicial district without unreasonable delay [but] [i]n no event shall the delay be more than twenty-four (24) hours following the arrest excluding Saturdays, Sundays, and holidays." We perceive no reason why the same time frame should not apply to a probationer who is arrested by his probation officer for an alleged probation violation.

■ The *Morrissey* court emphasized the importance of holding a hearing "while information is fresh and sources are available." However, we believe a second and even more fundamental policy underlies *Morrissey* and subsequent decisions. An individual may not be deprived of his constitutionally guaranteed liberty without cause. Detention is to be avoided when no probation violation has occurred. As the Court has stated:

> Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

*United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971).

■ Here, the magistrate concluded that Gawron had been unconstitutionally denied his liberty when an initial hearing was not provided (to quote *Morrissey*) "as promptly as convenient after arrest." The magistrate found no reason why the initial "arraignment" hearing could not have been conducted within a two-day period. The record does not show otherwise. No court conducted any *Morrissey* hearing of any kind. No judicial inquiry—not even a "minimal inquiry"—had occurred by the time Gawron applied for a writ of habeas corpus. Nor did the state even produce a violation report at the hearing on the writ. Consequently, that hearing was not a substitute for the *Morrissey*-mandated "minimal inquiry." We conclude the magistrate was correct in ordering Gawron's release from custody. We hold the district court erred in setting aside the magistrate's order. We therefore reverse that determination and we affirm the order of the magistrate releasing Gawron from custody.

### III

By our decision today we do *not* set down an absolute rule that a *Morrissey* "preliminary" hearing must always be provided within two working days of arrest on

a probation officer's warrant. Like the United States Supreme Court, "We have no thought to create an inflexible structure for parole [or probation] revocation procedures." *Morrissey v. Brewer, supra,* 408 U.S. at 490, 92 S.Ct. at 2604. Until codified, the rule continues to be that a "minimal inquiry in the nature of a preliminary hearing must be held as promptly as convenient after arrest while information is fresh and sources are available." *Id.,* at 485, 92 S.Ct. at 2602. Where, such as in this case, the state's principal witness is a local probation or police officer, it should pose no great burden upon the state to hold a *Morrissey* hearing within one or two days. On the other hand, where the state's evidence and witnesses are not readily available, additional time may be provided to permit the state to marshal its resources. The availability of the sentencing judge will also be a factor. Thus, whether the above standard has been met will turn upon an analysis of the circumstances of each individual case.

■ Nor does our affirmation of the magistrate's order result in a dismissal or bar of any charges relating to the alleged probation violation. The magistrate merely found that Gawron was entitled to be released from incarceration. That was the full extent of the relief granted. The delay in holding a *Morrissey* hearing does not, by itself, deprive the court of jurisdiction with respect to the underlying charges. *See Smith v. State,* 87 Idaho 163, 391 P.2d 849 (1964) (lack of timely arraignment). The probation officer was still free to file his report and pursue revocation of Gawron's probation.

The decision of the district court is set aside and the magistrate's order is hereby reinstated.

BURNETT and SWANSTROM, JJ., concur.